# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiffs,<br>   v.<br><br>JAMES H. MCNEAL, JR.,<br><br>        Defendant. | Case No.: 5:17-po-00103 JLT<br><br>ORDER DISMISSING THE CASE/CITATIONS BASED UPON A LACK OF PROBABLE CAUSE |

On April 24, 2017, the Court held the preliminary examination in this matter on two citations. The first, citation 6372669, charges Mr. McNeal with a violation of 43 C.F.R. 9212.1(f), interfering with firefighters. The second, citation 6373736, charges Mr. McNeal with violation of 43 CFR 8365.1-4(a)(2). For the following reasons, the Court finds there is not probable cause to proceed on either charge.[1]

**I.    Evidence presented at the hearing**

On August 27, 2016, in an area near the City of Lake Isabella, the Havilah fire had begun and was raging in earnest. The Court takes judicial notice[2] that this fire was burning near the Cedar fire which caused devastating effects to property and wildlife over nearly 30,000 acres. The Court takes judicial notice also that the Havilah fire was much smaller, affecting about 341 acres. Part of the Havilah

---

[1] In making this determination, the Court does not suggest there is not probable cause to support a different charge. It also does not condone the defendant's alleged conduct as outlined by the testimony of Staff Ranger Chartier at the hearing. This type of conduct places lives at risk and must be condemned in the strongest possible way.

[2] The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

fire was burning on federal lands managed by the Bureau of Land Management.

By August 27, 2016, Havilah residents had been ordered to evacuate and federal and local law enforcement officers were assisting in that effort. Key to getting residents safely out of the path of the fire, an airplane was being used to drop water on the fire. BLM Field Staff Ranger, Brien Chartier, assisted in the effort to evacuate residents. He testified that at least one time he was forced to drive through a wall of fire to get to a residence that needed to be evacuated and it was only the water drops that allowed some evacuations. In addition, the fire was moving so fast that only the water drops prevented the spread of the fire.[3]

Ranger Chartier testified that during his evacuation efforts at about 5:48 p.m., he was dispatched to a report that there was a drone flying in the path of the airplane being used to make the water drops. He travelled to the area and located a person, later identified as James McNeal—the defendant in this action—who was holding a small drone.

McNeal told Chartier that he was trying to obtain video and still photos of the firefighting airplane scooping up water. To do so, he flew the drone above and below the aircraft. Mr. McNeal was cooperative with Ranger Chartier and allowed him to view the video taken by the drone and to view the data maintained by the drone related to its operation. Chartier was familiar with of the operations of drones, given he owned and operated one, and was able to view the operational data in an app called Healthydrones.com. The app used the data downloaded from the drone and created tables detailing the flight and flight path of the drone. According to the data, Mr. McNeal operated the drone for about two minutes at over 400 feet but otherwise the drone flew below this level. The drone had been in the air about 18.5 minutes. Mr. McNeal flew the drone on a path, generally, over his own home, over the homes of his neighbors to the south, over a street and the homes of neighbors to the west and northwest and over a street and over properties to the north. It is undisputed that he did not fly over federal lands at any time during the 18 minute flight.

Ranger Chartier testified that Mr. McNeal told him that he had registered his drone with the FAA. To do this, the owner is obligated to agree to certain "guidelines" which, if not complied with, could subject the owner to criminal and civil penalties. One of the guidelines limits the operation of

---

[3] The parties stipulated to the fact that the water drops from the airplane were needed to fight the fire.

drones to below 400 feet and prohibits operating drones such to interfere with emergency personnel and equipment.

As a consequence of the drone's flight which, it turns out, was in the direct path of the firefighting aircraft, the plane was forced to divert around the City of Lake Isabella and take a longer route to where the water was needed to be dropped. This caused delays in dropping the water and resulted in fewer drops due to the need to refuel more often.

**II.     The charges**

The government has brought two charges against Mr. McNeal. In the first, Mr. McNeal is alleged to have violated 43 C.F.R § 9212.1(f) and in the second, he is charged with violating 43 C.F.R. § 8365.1-4(a)(2). The government is obligated to prove that Mr. McNeal acted knowingly and willfully as to both of these charges. United States v. Freeman, 42 F.3d 1403 (9th Cir. 1994).

As to the first citation, the Court finds that there was sufficient evidence presented that Mr. McNeal interfered with firefighting equipment. The evidence demonstrated that Mr. McNeal purposefully flew his drone into the path of the firefighting aircraft. Though there is no evidence that he intended to impede the progress of that airplane, he intentionally flew the drone above and below the firefighting airplane because he wished to obtain photos of the airplane scooping up water. As a consequence, the airplane was forced to divert and was impeded in its firefighting efforts. This is sufficient to demonstrate Mr. McNeal acted willfully and knowingly. As to the second citation and based upon this same evidence, the Court concludes that there is sufficient evidence that operating the drone in this fashion created a nuisance.

The question remains, however, whether Mr. McNeal's conduct may be addressed by the regulations under which he was cited. As a preliminary matter, clearly, the government has the authority to regulate conduct on adjacent property for the protection of the public land and those using it. Indeed, the Property Clause of the United States Constitution reads in pertinent part, "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . U.S. Const. Art. IV, § 3, cl. 2. Whether the government chooses to exercise this authority is a different matter.

In <u>United States v. Alford</u>[4], 274 U.S. 264, 267 (1927), which interpreted a statute—which is the current 18 USC § 1856[5]—to not require the wrongful fire-building activity to occur on public land. The Court held,

> The danger depends upon the nearness of the fire not upon the ownership of the land where it is built . . . We regard the meaning as too plain to be shaken by the suggestion that criminal statutes are to be construed strictly. They also are to be construed with common sense.
>
> The statute is constitutional. Congress may prohibit the doing of acts upon privately owned lands that imperil the publicly owned forests. <u>Camfield v. United States</u>, 167 U. S. 518, 17 S. Ct, 864, 42 L. Ed. 260. See <u>McKelvey v. United States</u>, 260 U. S. 353, 43 S. Ct. 132, 67 L. Ed. 301. The word 'near' is not too indefinite. Taken in connection with the danger to be prevented it lays down a plain enough rule of conduct for any one who seeks to obey the law.

Again, in <u>United States v. Arbo</u>, 691 F.2d 862, 865 (9th Cir. 1982), the Ninth Circuit determined that the United States has the authority to regulate conduct beyond the confines of the property markers of the federal government. The Court held, "[I]n this case we need not reach the issue of whether the incident in question occurred on state rather than federal land, but rather decide it based upon whether the government agents' actions in confronting Arbo were "reasonably necessary to protect adjacent federal property." <u>Id</u>.

In <u>United States v. Lindsey</u>, 595 F.2d 5, 6 (9th Cir. 1979), the defendants made camp and built a fire in the riverbed along the Snake River in Idaho. The riverbed was owned by the State of Idaho and was not federal land, though all around it was federal land. <u>Id</u>. The defendants were charged with camping and building a fire without a permit according to 36 CFR § 261.58(e) and 36 CFR 261.52(a). <u>Id</u>. After the court dismissed the charges, the government appealed. The Ninth Circuit reversed and held,

> The fact that title to the land on which the violations occurred was in the state of Idaho does not deprive the United States of regulatory control over appellees' conduct. Article IV, Section 3, Clause 2 of the United States Constitution provides in part:

---

[4] <u>Camden</u> and <u>McKelvey</u> rely upon the federal government's police power without reference the Property Clause.

[5] § 1856 reads, "Whoever, having kindled or caused to be kindled, a fire in or near any forest, timber, or other inflammable material upon any lands owned, controlled or leased by, or under the partial, concurrent, or exclusive jurisdiction of the United States, including lands under contract for purchase or for the acquisition of which condemnation proceedings have been instituted, and including any Indian reservation or lands belonging to or occupied by any tribe or group of Indians under the authority of the United States, or any Indian allotment while the title to the same is held in trust by the United States, or while the same shall remain inalienable by the allottee without the consent of the United States, leaves said fire without totally extinguishing the same, or permits or suffers said fire to burn or spread beyond his control, or leaves or suffers said fire to burn unattended, shall be fined under this title or imprisoned not more than six months, or both."

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States.
>
> It is well established that this clause grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters.

Id. at 6.

Again, in United States v. Scotford[6], 302 F. App'x 561, 563 (9th Cir. 2008), the Court relied upon Lindsey to find that the federal law enforcement officer's actions in attempting to stop the defendant operating a snowmobile near a closed area of federal land, was necessary to protect the adjacent federal land. In doing so, the Court affirmed the defendant's conviction for interfering with the officer's duties by failing to obey his orders and for using a prohibited vehicle off road under 36 C.F.R. § 261.3(a), § 216.15(i) and § 261.56. The Scotford Court reiterated that, "Actions taken on non-federal land contribute to the protection of the National Forest when they are 'reasonably necessary to protect adjacent federal property'" quoting Lindsey.

Nevertheless, in United States v. Grant, 318 F.Supp.2d 1042, 1044 (D. Mont. 2004), the Court noted that the defendant was charged under 18 USC § 1855 which does not contain the "in or near" language contained in § 1856, which was interpreted in Alford. Thus, Grant determined that Alford's analysis did not apply. Likewise, though Lindsey relied only upon the Property Clause for its holding, Grant noted that the specific statutory scheme under which the defendant was charged, 36 C.F.R. § 261, expressly authorized regulation of any activity, no matter where it occurs, that threatens federal lands.[7] Thus, Grant determined that because the express language of 18 U.S.C. § 1855 did not anticipate regulation of activity on adjacent land, the court lacked jurisdiction. Id. at 1045. In doing so, implicitly, Grant determined that while the government *could* regulate activity on adjacent land, in enacting 18 U.S.C. § 1855 it did not do so. United States v. Concrete, 2009 WL 733881 (C.D. Cal. Mar. 16, 2009), agreed with Grant and held similarly. The Court also agrees with the analysis of Grant.

Here, 43 C.F.R. 9212.12.0 provides, "The purpose of this subpart is to set forth procedures to

---

[6] Scotford arose out of a case decided in this District, United States v. Scotford, 2007 WL 1931666, at *7 (E.D. Cal. June 29, 2007). Based upon the Scotford analysis, clearly, Ranger Chartier was authorized to investigate the use of the drone to determine the threat it posed to the firefighting activing given it was an effort toward protecting federal land.

[7] Thus, the Court agrees that Scotford was properly decided given the express language of 36 C.F.R. § 261—the statutory scheme under which the defendant was charged—which regulates activities on adjacent lands.

prevent wildfires on the public lands." Section 9212.0-2 provides similarly: "The objective of this subpart is to prevent wildfires on the public lands." Finally, § 9212.0-6 reads, "It is the policy of the Bureau of Land Management to take all necessary actions to protect human life, the public lands and the resources and improvements thereon through the prevention of wildfires."

Additionally, 43 C.F.R. § 8365.0-1 reads, "The purpose of this subpart is to set forth rules of conduct for the protection of public lands and resources, and for the protection, comfort and well-being of the public in its use of recreation areas, sites and facilities on public lands." Likewise, 43 C.F.R. § 8365.0-2 reads, "The objective of this subpart is to insure that public lands, including recreation areas, sites and facilities, can be used by the maximum number of people with minimum conflict among users and minimum damage to public lands and resources." Further clarifying the rules, 43 C.F.R. § 8365.1 provides, "The rules in this subsection shall apply to use and occupancy of all public lands under the jurisdiction of the Bureau of Land Management."

Finally, the offenses at issue state, "Unless permitted in writing by the authorized officer, it is prohibited on the public lands to: [¶¶] (f) Resist or interfere with the efforts of firefighter(s) to extinguish a fire" (43 CFR § 9212.1(f)) and "(a) No person shall cause a public disturbance or create a risk to other persons on public lands by engaging in activities which include, but are not limited to, the following: [¶¶] (2) Creating a hazard or nuisance." 43 CFR § 8265.1-4(a)(2).

Though the Court finds the breadth of 43 C.F.R. § 9212.0-6 *could* allow regulation of activity on adjacent land (*See* Lindsey, 595 F.2d at 6), § 9212.1(f) expressly eschewed this option by requiring the unlawful activity to occur "on public lands." Likewise, though the purposes behind 43 C.F.R. § 8365 et seq. are broad, they do not appear to be so broad as to support an intent to regulate activity on adjacent property. Indeed, the specific offense cited expresses no intent to regulate activity on adjacent property. Though the regulation *could* be read to do so attempting to do this, interpreting the regulation in this manner would be inconsistent with the stated purpose of the statutory scheme.

///

///

///

///

For these reasons, the Court finds the citations are not supported by probable cause and must be dismissed.

IT IS SO ORDERED.

Dated: **May 5, 2017**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE